IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JOSHUA CALHOUN #1985495 | § | |
| VS. | § | CIVIL ACTION NO. 6:22cv077 |
| DIRECTOR, TDCJ-CID | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner Joshua Calhoun, an inmate of the Texas Department of Criminal Justice (TDCJ) proceeding pro se, filed a petition for a writ of habeas corpus and paid the filing fee. The case was automatically referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case.

Procedural History

A jury in Henderson County, Texas, found Petitioner guilty on December 10, 2014, of evading arrest with a motor vehicle. (Dkt. #6-1 at 128.) On February 12, 2015, the trial court sentenced him to fifteen years in prison. (*Id.* at 127.) Petitioner appealed. The Twelfth Court of Appeals affirmed his conviction but vacated his sentence and remanded for a new sentencing hearing because the state had not offered sufficient proof of the enhancement factor. (Dkt. #6-17 at 5, 10.) Petitioner represented himself at the new sentencing hearing before a jury, after which the jury sentenced Petitioner to seventeen and a half years in prison, with credit for 1,676 days already served. (Dkt. #6-22 at 4.)

Petitioner appealed again, and this time the Twelfth Court of Appeals affirmed in full. (Dkt. #6-31.) The Texas Court of Criminal Appeals denied discretionary review on December 9, 2021. *See* Court of Criminal Appeals Docket for Case No. PD-1040-20, available at

https://search.txcourts.gov/Case.aspx?cn=PD-1040-20&coa=coscca (last visited Mar. 31, 2023).

The Texas Court of Criminal Appeals dismissed Petitioner's first application for a state writ of habeas corpus without written order as noncompliant with state rules on June 30, 2021. (Dkt. #7-5.) Petitioner filed a subsequent application for a state writ of habeas corpus in August 2021. (Dkt. #7-15 at 4.) The trial court found that he lacked a cognizable claim (Dkt. #7-15 at 31), and the Court of Criminal Appeals denied the writ without written order on October 27, 2021. (Dkt. #7-13.)

Petitioner filed the instant federal habeas petition on January 31, 2022 (Dkt. #1 at 10), and Respondent does not contest its timeliness or the Court's jurisdiction to hear it. (Dkt. #5 at 1, 6.) The matter is ripe for review.

## Facts

The Twelfth Court of Appeals summarized the basic facts underlying Petitioner's conviction as follows on his second direct appeal:

> At trial, the evidence showed that Appellant's employer, Brooks Atwood, reported his pickup truck stolen. The next day, an employee at a retail store contacted Atwood and told him that Appellant was in the store and Atwood's truck was in the parking lot. Atwood contacted the police, who soon located the truck traveling on the highway. Deputy Spencer Gray attempted to stop the truck, but it accelerated and eventually eluded him.
>
> Gray subsequently found the truck abandoned in a hay meadow. The police set up a perimeter and began to search for the driver. While patrolling the area, investigator Michael Shelley saw a man sit down on the porch of a residence. Shelley pulled into the driveway, and the man ran toward the tree line and into some heavy brush. Shelley ordered him to come out of the brush. The man came out of the brush and identified himself as Appellant.

(Dkt. #6-31 at 1.)

## Claims for Relief

Petitioner raises three grounds for relief:

1. The trial court denied Petitioner due process by denying funding for an MRI and an expert

2

      to testify about the results. (Dkt. #1 at 6.)

2. Petitioner was denied the right to present evidence that the prosecutor gathered evidence against him illegally. (*Id.*)

3. The prosecutor failed to honor an agreement that Petitioner would be sentenced to time served if he shared information about another case. (*Id.* at 7.)

## Standard of Review

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1364, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does "not sit as a super state supreme court to review error under state law." *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007) (citations omitted); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

Review of the petition is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Lindh v. Murphy*, 521 U.S. 320, 327 (1997). Under AEDPA, a petitioner who is in custody "pursuant to the judgment of a State court" is not entitled to federal habeas corpus relief with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "By its terms § 2254 bars re-litigation of any claim 'adjudicated on the merits' in

state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2)." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). AEDPA imposes a "highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation and internal quotation marks omitted).

With respect to the first provision, a "state court decision is 'contrary to' clearly established federal law if (1) the state court 'applies a rule that contradicts the governing law' announced in Supreme Court cases, or (2) the state court decides a case differently than the Supreme Court did on a set of materially indistinguishable facts." *Nelson v. Quarterman*, 472 F.3d 287, 292 (5th Cir. 2006) (en banc) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003)). "[R]eview under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011). As such, "evidence later introduced in federal court is irrelevant." *Id.* at 184. "The same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2), as all nine Justices acknowledged." *Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011).

For the purposes of section 2254(d)(2), a Texas court's factual findings are presumed to be sound unless a petitioner rebuts the "presumption of correctness by clear and convincing evidence." *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (citing section 2254(e)(1)). The "standard is demanding but not insatiable; . . . [d]eference does not by definition preclude relief." *Id.* (citation and internal quotation marks omitted). The Supreme Court has held that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citation omitted). The Supreme Court has also explained that the provisions of AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that

state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Federal habeas corpus relief is not available just because a state court decision may have been incorrect; instead, a petitioner must show that a state court decision was unreasonable. *Id.* at 694.

Discussion and Analysis

1. Funding for MRI and expert

Petitioner asserts that the trial court violated his right to due process by denying him funding needed to "be checked by MRI" and for a related expert witness that "could change the minds of a jury." (Dkt. #1 at 6.) He raised this claim on direct appeal. (Dkt. #6-29 at 6.) The Twelfth Court of Appeals summarized and rejected the claim as follows:

> In his first issue, Appellant contends the trial court violated his due process rights by denying his request for funding and an expert to conduct an MRI of his brain.
>
> Standard of Review and Applicable Law
>
> We review a trial court's ruling on an indigent defendant's motion requesting expert-witness funds (or the appointment of an expert witness) for abuse of discretion. *See Deason v. State*, 84 S.W.3d 793, 796 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd) (citing *Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998)); *Perales v. State*, 226 S.W.3d 531, 536 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). The denial of an expert is subject to the harmless error analysis appropriate for constitutional errors. *Lighteard v. State*, 982 S.W.2d 532, 535 (Tex. App.—San Antonio 1998), pet. ref'd, 994 S.W.2d 189 (Tex. Crim. App. 1999). When an appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the appellate court must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. TEX. R. APP. P. 44.2(a).
>
> The United States and Texas Constitutions provide that no person may be deprived of life, liberty or property without due process of law. U.S. CONST. amend. V, U.S. CONST. amend. XIV § 1, TEX. CONST. art. 1 § 19. Due process requires that a defendant have access to the "raw material integral to the building of an effective defense." *Rey v. State*, 897 S.W.2d 333, 337 (Tex. Crim. App. 1995) (citing *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985)). *Ake* required that the defendant be provided a psychiatric expert because the defendant demonstrated that his mental condition would be a "significant factor at trial." *Ake*, 470 U.S. at 83. *Rey* held that *Ake* is not limited to psychiatric experts but applies whenever an indigent defendant establishes a "substantial need for an expert, without which the fundamental fairness of his trial will

5

be called into question." *Rey*, 897 S.W.2d at 338. The importance and complexity of the scientific issue in the case bears directly upon whether the appointment of an expert will be helpful. *Id.* The expert appointed must be one who will be available to testify in support of a defense if his opinion supports that defense. *See De Freece v. State*, 848 S.W.2d 150, 159 (Tex. Crim. App. 1993). But a defendant is entitled to more than an expert to testify on his behalf. *Id.* The expert must be one who can provide technical assistance in evaluating the strength of possible defenses, in identifying weaknesses in the State's case, and in preparing defense counsel to cross examine opposing experts. *Id*.

Analysis

Prior to the punishment hearing, Appellant filed an ex parte motion requesting funds, in which he sought funding for an MRI. The trial court conducted a hearing on Appellant's motion. At the hearing, Appellant provided an affidavit from his mother, Margaret Haller, which detailed a family history of brain disorders, including cerebral arteriovenous malformation and Chiari II Malformation. [FN2: According to the Mayo Clinic, a cerebral arteriovenous malformation is a tangle of abnormal blood vessels connecting arteries and veins in the brain; however, they are rarely passed down genetically and are usually present at birth. BRAIN AVM (arteriovenous malformation), https://www.mayoclinic.org/diseases-conditions/brain-avm/symptoms-causes/syc-20350260 (last visited July 27, 2020). Chiari II Malformation is a congenital condition in which brain tissue extends into your spinal canal. CHIARI MALFORMATION, https://www.mayoclinic.org/diseases-conditions/chiari-malformation/symptoms-causes/syc-20354010 (last visited July 27, 2020).] Haller also averred that Appellant has a history of traumatic brain injuries starting at five years old. In addition, Appellant provided his grandmother's death certificate which confirmed her cause of death as cerebral arteriovenous malformation. Appellant testified at the hearing that he has a family history of brain conditions. He expressed concern that he has the same brain disorder as his family members and that an MRI would help to explain his conduct in the case. However, Appellant admitted undergoing an MRI when he was thirteen and the result did not demonstrate that he suffers from the genetic brain disorders over which he was concerned. [FN3: The record indicates that Appellant was approximately thirty-eight years old at the time of the punishment hearing.] At the time, Appellant was diagnosed with attention deficit hyperactivity disorder (ADHD). He contended that his mother conducted research and believes an MRI would explain his behavior. The trial court denied the motion at the conclusion of the hearing.

Appellant had the initial burden of showing the need for expert assistance on a particular issue and that the expert assistance will be a significant factor at trial. *See Rey*, 897 S.W.2d at 339; *Ex parte Jimenez*, 364 S.W.3d 866, 877 (Tex. Crim. App. 2012). Here, Appellant offered little more than undeveloped assertions with no concrete reasons for requiring the trial court provide expert assistance. *See Caldwell v. Mississippi*, 472 U.S. 320, 323 n.1 (1985) (no deprivation of due process in court's decision not to appoint various experts and investigators where "petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial"); *see also Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996) (*en banc*) (rejecting contention that trial court erred by refusing to grant motion for expert assistance in jury selection where

> "appellant offered nothing but undeveloped assertions that the requested assistance would be beneficial"). Appellant speculated without the support of medical records or reports to substantiate his request for an expert and funding. Both cerebral arteriovenous malformation and Chiari II Malformation are present at birth, and Appellant admitted that a previous MRI did not identify either disorder. Furthermore, other than Appellant's claim that the disorders may explain his behavior, Appellant offered no evidence of a correlation between the malformations and his conduct or the propensity to engage in criminal activity. Because the trial court could reasonably conclude that Appellant did not make a sufficient threshold showing of the need for expert assistance, we hold that the trial court did not abuse its discretion in denying Appellant's request for funding and an expert for purposes of conducting an MRI. *See Griffith*, 983 S.W.2d at 286-87. Appellant's first issue is overruled.

(Dkt. #6-31 at 2–4.) Petitioner also raised this claim in his application for a state writ of habeas corpus (Dkt. #7-15 at 9), which was denied without written order. (Dkt. #7-13.)

Because the Twelfth Court of Appeals issued the "last reasoned opinion" on this issue, this Court reviews it to determine whether the denial of this claim was contrary to or an unreasonable application of federal law. *See Langley v. Prince*, 926 F.3d 145, 158 (5th Cir. 2019) ("What matters is the last reasoned state court decision found it persuasive.") (citing *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018) (explaining that federal habeas review of a state conviction "is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion.")). When the state court issues its decision on the merits in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson*, 138 S.Ct. at 1192.

The Twelfth Court of Appeals identified the correct federal standard above, and its application of the standard was reasonable. Petitioner's belief that an MRI might reveal one of the brain anomalies he referenced was supported by little more than his own speculation and was, in fact, contradicted by an earlier MRI that found neither defect. Moreover, even if he had demonstrated the existence of one of these malformations, he offered no basis for it to excuse or in any way explain his behavior. Even now, before this Court, he offers no support for his assertion that such evidence had any likelihood of

"chang[ing] the minds" of the jury. (Dkt. #1 at 6.) The assertion in his reply that "in fact any testimony could have changed the minds of a jury" is simply not a correct statement of the applicable legal standard. (Dkt. #13 at 1.)

The Supreme Court has held that a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (citation omitted). The state court's determination here was likely correct; at any rate, it was not so unreasonable that it was "beyond any possibility for fairminded disagreement." *Id*. at 103. Accordingly, Petitioner is not entitled to relief on this claim.

2. Evidence of prosecutor's illegal gathering of evidence

Petitioner next asserts that he was denied the right to present evidence that the prosecutor ordered the Henderson County Sheriff's Office to gather evidence against him illegally, by force and without a search warrant, for the purpose of using that evidence against him at trial. (Dkt. #1 at 6.) Specifically, Petitioner's claim concerns a search of his cell shortly before trial while he was a pretrial detainee, and his desire to introduce evidence about that search to the jury. (*See* Dkt. #6-29 at 17–18.) Petitioner also raised this claim on direct appeal (Dkt. #6-29 at 6), where the Twelfth Court of Appeals summarized and rejected it:

> In his second issue, Appellant contends the trial court erred when it excluded several pieces of evidence. Specifically, he urges the trial court should have permitted him to present evidence of an alleged illegal search of his jail cell . . ..
>
> Standard of Review & Applicable Law
>
> Trial court decisions to admit or exclude evidence will not be reversed absent an abuse of discretion. *Beham v. State*, 559 S.W.3d 474, 478. (Tex. Crim. App. 2018). Under this standard, the trial court's decision to admit or exclude evidence will be upheld as long as it was within the "zone of reasonable disagreement." *Id*.
>
> Under Rule of Evidence 401, evidence is relevant if it has any tendency to make a "fact . . . of consequence" more or less probable than it would be without the evidence. TEX. R. EVID. 401. The Court of Criminal Appeals has described the trial court's role in determining relevance as a threshold matter in this way:

8

> Determining the relevance of any given item of evidence to any given lawsuit is not exclusively a function of rule and logic. The trial court must rely in large part upon its own observations and experiences of the world, as exemplary of common observation and experience, and reason from there in deciding whether proffered evidence has "any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence." The determination of relevance, vel non, thus depends upon one judge's perception of common experience. The process cannot be wholly objectified.

*Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). These observations ring particularly true in the punishment context, where "there are no distinct 'facts . . . of consequence' that proffered evidence can be said to make more or less likely to exist." *See Ellison v. State*, 201 S.W.3d 714, 718-19 (Tex. Crim. App. 2006) (citing *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)). Inevitably, "[d]eciding what punishment to assess is a normative process, not intrinsically factbound." *Murphy v. State*, 777 S.W.2d 44, 63 (Tex. Crim. App. 1988); *Beham*, 559 S.W.3d at 478.

Nevertheless, the Rule 401 concept of relevance has been incorporated into Article 37.07, Section 3(a) of the Texas Code of Criminal Procedure, which "governs the admissibility of evidence during the punishment stage of a non-capital criminal trial." *McGee v. State*, 233 S.W.3d 315, 318 (Tex. Crim. App. 2007). Under that provision, "evidence may be offered" in the punishment stage of trial "as to any matter the court deems relevant to sentencing[.]" TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2019). The statute gives a non-exhaustive list of some evidence a trial court might legitimately deem "relevant to sentencing"—including, but not limited to, the "prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, [and] the circumstances of the offense for which he is being tried…". *Id*. Evidence is "relevant to sentencing," within the meaning of the statute, if it is "helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *McGee*, 233 S.W.3d at 318 (citing *Rodriguez v. State*, 203 S.W.3d 837, 842 (Tex. Crim. App. 2006)); *Beham*, 559 S.W.3d at 479.

### Jail Cell Search

Appellant urged that he should be allowed to present evidence concerning the search of his jail cell in August 2017. The following exchange occurred between Appellant and the trial court:

> Appellant: Basically, that, you know, the district attorney could have gathered information that could have been passed on through the illegal search and seizure, that now after I brought up the issue of the illegal search and seizure, Ms. Myles said I'm not going to use any of that information that I gathered, in the criminal case. She also stated that I solely directed Henderson County Sheriff's Department to obtain the evidence, solely for evidence for trial purposes.
>
> . . .

9

> The Court: And as I understand your position, without weighing in on whether it's true or not, but your position is that Elizabeth Myles asked the sheriff's department, the day before the trial was to start, to toss your cell and search your cell; is that right, is that your understanding?
>
> Appellant: It wasn't -- no, there was a directive, and the directive was to obtain information from me. It wasn't for administrative purposes. There's two different levels. There's administrative and there's court purposes. Administrative purposes, these can go in and search and seize -- these people went in for the sole purpose, and she openly admitted that she went in for the sole purpose of evidence for trial, and she obtained that evidence illegally.
>
> . . . by doing that, it subjected me to mental anguish that, you know, it does play factor in a sentencing. You know, if I'm sitting here, you know, subject to a mental situation, you know, it plays factor. Well, he's already been through enough. You see what I'm saying? The jurors can play that into factor. There's a whole bunch of elements across the board on a two to ten that can be take into consideration of that. You know, was anybody hurt? Was there any property damage? Did he suffer in any kind of mental anguish during the process? Was he being treated fairly going through the judicial system?

The trial court granted the State's motion in limine stating that the evidence is not relevant and if it "has any relevance at all, it's certainly outweighed by any potential prejudicial effect."

Appellant claims that information obtained during the search of his jail cell could have been used against him during trial. He further argues that evidence of the search itself would have assisted the jury in understanding "the manner [in which] he had been treated while he was going through the judicial system." However, such evidence has no bearing on issues relevant to sentencing, such as Appellant's prior criminal record, Appellant's general reputation or character, an opinion regarding his character, circumstances of the charged offense, personal responsibility, and moral culpability. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1); *see also Olivas v. State*, No. 11-16-00324-CR, 2018 WL 5833223, at *3 (Tex. App.—Eastland Nov. 8, 2018, pet. ref'd) (mem. op., not designated for publication). Such issues should be the focus of the jury's attention at punishment. For this reason, the trial court was within its discretion to determine that any probative value that the evidence might hold would do no more than confuse the jury by diverting the jury's attention from evidence pertinent to punishment or mislead the jury by encouraging the jury to give undue weight to the evidence. *See* TEX. R. EVID. 403; *see also Casey v. State*, 215 S.W.3d 870, 880 (Tex. Crim. App. 2007) ("'Confusion of the issues,' refers to a tendency to confuse or distract the jury from the main issues in the case" and "'Misleading the jury,' refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds"). And Appellant makes no attempt to demonstrate how he was harmed by exclusion of this evidence or how it affected the jury's sentence, such as how the sentence may have differed had the evidence been admitted. See TEX. R. APP. P.

> 44.2(b) (a non-constitutional error, defect, irregularity, or variance that does not affect substantial rights must be disregarded).
>
> Based on the forgoing, we cannot say that exclusion of this evidence is outside the zone of reasonable disagreement. *See Beham*, 559 S.W.3d at 478. As a result, the trial court did not abuse its discretion by excluding evidence of the search of Appellant's jail cell and this portion of Appellant's second issue is overruled.

(Dkt. #6-31 at 4–7.) Petitioner also arguably raised this claim in his state habeas corpus petition (Dkt. #7-15 at 11), which was denied without written order. (Dkt. #7-13.) But again, this Court's review focuses on the "last reasoned opinion" by the Twelfth Court of Appeals. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Review of the correctness of a state court's evidentiary rulings under state law "is no part of a federal court's habeas review of a state conviction." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Accordingly, the erroneous admission or exclusion of evidence in a state trial will only warrant federal habeas relief when it rises to the level of violating a defendant's "federal constitutional rights." *Id.* at 68; *Woods v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007). Thus, an evidentiary error in a state trial justifies federal habeas corpus relief only if the error is so extreme that it constitutes a denial of fundamental fairness under the Due Process Clause. *Bridge v. Lynaugh*, 838 F.2d 770, 772 (5th Cir. 1988). "The challenged evidence must be 'a crucial, critical, or highly significant factor in the context of the entire trial.'" *Bridge*, 838 F.2d at 772 (quoting *Thomas v. Lynaugh*, 812 F.2d 225, 230 (5th Cir. 1987)). In order to obtain relief, the petitioner must also show that the trial court's error had a "substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). The petitioner must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict. It must have had a substantial effect or influence in determining the verdict." *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir. 1996).

Petitioner here asserts that he was "denied the right to present" evidence of the allegedly wrongful search of his cell. (Dkt. #1 at 6.) But he does not and cannot establish that evidence of the

11

prosecutor's involvement in the search was crucial, critical, or highly significant to his sentencing or that it would have had any beneficial impact on the jury. The search did not have any bearing on Petitioner's culpability for his criminal actions, his record, his character, or any of the other factors observed by the state court to be relevant to sentencing. Regardless of whether its exclusion was correct under state law, it did not make Plaintiff's sentencing hearing fundamentally unfair as required to warrant federal habeas relief.

   3. Prosecutor's failure to honor agreement

Petitioner alleges that his prosecutor reneged on an agreement to a sentence of time served if Petitioner provided information on another case. (Dkt. #1 at 7.) On direct appeal, Petitioner asserted that the trial court erred in excluding evidence of "plea negotiations with the district attorney" and observed that "[t]he trial court granted the State's motion in limine concerning plea negotiations." (Dkt. #6-29 at 6, 9.) The Twelfth Court of Appeals denied relief on that claim because, as a matter of state law, "evidence about plea negotiations is generally inadmissible because such evidence is irrelevant or because the prejudicial effect of the evidence is greater than any probative value." (Dkt. #6-31 at 10.)

Similarly, Petitioner asserted in his final state habeas application a claim captioned "exclusion of evidence," in which he alleged that the trial court's rulings "al[l]owed the state to promis[e] and make agreements for exchange but then lie and deny." (Dkt. #7-15 at 11–12.) That claim was denied without written order. (Dkt. #7-13.)

Respondent asserts that Petitioner's present claim is procedurally defaulted, because "[a] claim that the trial court erred in excluding evidence of plea negotiations is distinctly different than a claim of prosecutorial error for failing to honor a plea agreement." (Dkt. #5 at 10.) Petitioner calls Respondent's position a lie and asserts that his claim constitutes "a violation to fairness of the choice of trial by jury." (Dkt. #13 at 2.)

Respondent is correct. State prisoners filing petitions for a writ of habeas corpus are required to exhaust their state remedies before proceeding to federal court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1). To satisfy this exhaustion requirement, a state prisoner must "fairly present" all of his claims to the state court. *See Picard v. Connor*, 404 U.S. 270, 275 (1971). In Texas, all claims must be presented to and ruled upon the merits by the Texas Court of Criminal Appeals. *See Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985). To be deemed "fairly presented," a petitioner's federal "claim must be the 'substantial equivalent' of one presented to the state courts." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). The claim "need not spell out each syllable of the claim before the state court to satisfy the exhaustion requirement," but "[t]his requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.*

Claims that are not properly exhausted must be dismissed as procedurally defaulted unless the petitioner demonstrates cause and prejudice or that a fundamental miscarriage of justice would result from a court's refusal to consider a claim. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *see also Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995). The Supreme Court explained this procedural default doctrine as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750. A habeas petitioner "meets the technical requirements for exhaustion" when state remedies are no longer available to him, but the procedural default doctrine exists to prevent inmates from effectively avoiding the exhaustion requirement by default. *Id*. at 732. Thus, defaulted

claims in a mixed habeas petition are dismissed as procedurally barred. *See Fearance*, 56 F.3d at 642 ("Accordingly, this court is barred from reviewing the merits of Fearance's forced medication claims: The adequate and independent state ground doctrine 'bar[s] federal habeas when a state court decide[s] to address a prisoner's federal claims because the prisoner had failed to meet a state requirement.'") (quoting *Coleman*, 501 U.S. at 729–30); *see also Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001) (same).

Petitioner's claim here is materially distinct from the one raised in his direct appeal and his state habeas application. A claim of trial court error in the exclusion of evidence is subject to a wholly different legal standard than an effort to enforce a purported plea agreement or a claim of prosecutorial misconduct for failing to abide by such an agreement. Any effort by Petitioner to raise his present claim now in state court would be barred as an abuse of the writ. Tex. Code Crim. Proc. Ann. art. 11.07 § 4. Accordingly, this claim is procedurally defaulted and, in the absence of any effort by Petitioner to demonstrate cause to excuse the default, it is not subject to federal habeas review and must be denied on that basis.

## Certificate of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding unless a circuit justice or judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A). A district court may deny a certificate of appealability *sua sponte* because the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).

To obtain a certificate of appealability, the petitioner must make a substantial showing that the petitioner has been denied a federal right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). To do

this, he must demonstrate that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or that the questions are adequate to deserve encouragement to proceed further. *James v. Cain*, 50 F.3d 1327, 1330 (5th Cir. 1995).

When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a certificate of appealability should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the prisoner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists reviewing this case could not disagree that Petitioner's third claim is procedurally defaulted and that the Texas courts reasonably rejected Petitioner's other claims. Accordingly, the Court should deny a certificate of appealability.

## RECOMMENDATION

The undersigned accordingly recommends that a writ of habeas corpus be denied, this action be dismissed with prejudice, and that a COA be denied *sua sponte*.

A copy of these findings, conclusions and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendations must file specific written objections within 14 days after being served with a copy.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's proposed findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific, and the district court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Commission*, 834 F.2d 419, 421 (5th Cir. 1987).

Failure to file specific written objections will bar the objecting party from appealing the factual findings and legal conclusions of the Magistrate Judge which are accepted and adopted by the district court except upon grounds of plain error. *Duarte v. City of Lewisville*, 858 F.3d 348, 352 (5th Cir. 2017).

**So ORDERED and SIGNED this 3rd day of April, 2023.**

JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE